UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ABDULLAH MUJAHID,

          Plaintiff,

v.

KELLY J. CUNNINGHAM, MARK DAVIS, DONALD GAUNTZ, RANDY PECHEOS, KRISTINA SPARKS, CARISSA BONNEMA, JEREMY P. DORFNER, LAN BITOW, and ALEC BRIAN,

          Defendants.

No. C10-5916 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted for: August 12, 2011**

Plaintiff Abdullah Mujahid is civilly committed as a sexually violent predator at the Special Commitment Center (SCC) pursuant to Wash. Rev. Code 71.09. Mr. Mujahid filed this action claiming that Defendants violated his civil rights in the handling of his mail. ECF No. 4. Before the Court are Plaintiff's second (ECF No. 36) and third (ECF No. 42) motions for temporary restraining order and preliminary injunction. For the reasons stated below, these motions should be denied.

**BACKGROUND**

**A.    Procedural Background – Previous Requests for Injunctive Relief**

On January 21, 2011, Mr. Mujahid filed a motion for temporary restraining order and a preliminary injunction asking the Court to issue a cease and desist order restraining Defendants (including Kristina Sparks) from handling any mail and that all of Mr. Mujahid's mail be pre-

REPORT AND RECOMMENDATION- 1

screened by the Chaplain of SCC. ECF No. 19. Mr. Mujahid argued that SCC Policies 202 and 208 are unconstitutional. *Id*. On March 23, 2011, the undersigned issued a Report and Recommendation denying Mr. Mujahid's motion. ECF No. 32. While the Report and Recommendation was pending, Mr. Mujahid filed a Motion for Preliminary Injunction and Stay Against SCC Policy 208 asking the Court to enjoin enforcement of SCC Policy 208 as it relates to his mail, arguing again that SCC Policies 202 and 208 are unconstitutional. ECF No. 36. On May 12, 2011, the District Court adopted the Report and Recommendation and entered an order denying Mr. Mujahid's first motion. ECF No. 35.

Before the Court considered Mr. Mujahid's second motion for temporary restraining order and preliminary injunction (ECF No. 36), Mr. Mujahid filed a third motion (ECF No. 42). In this latest motion, Mr. Mujahid again asks the Court to immediately restrain Kristina Sparks from any mail room functions and contact with Mr. Mujahid pending this litigation. ECF No. 42.

**B.     The Complaint**

Mr. Mujahid alleges that on February 18, 2010, SCC mailroom staff returned a package addressed to him from an Islamic Mosque in Chino, California because the package had "no prior approval" pursuant to SCC Policy 208, and that this was done even though packages with obvious religious addresses received in prior years had been funneled through the Chaplain's office for authorization. ECF No. 4, p. 5. He alleges further that mailroom staff placed various unidentified pieces of mail, catalogues, books and magazines addressed to him in the trash and returned and rejected other unidentified items of mail to retaliate against him because he had legally changed his name and was using both names in his mail. *Id.*, pp. 5-6. Mr. Mujahid claims that he was placed on complete mailroom restriction in May 2010, at which time all

REPORT AND RECOMMENDATION- 2

incoming mail was directed to Alder West (his living unit) and his outgoing mail was sealed by mailroom staff before it was taken to the mailroom. *Id.* Mr. Mujahid states that several Islamic religious publications were mailed to him in March and May 2010, but he never received the publications and was never notified by SCC mail staff that his publications were rejected. *Id.*, pp. 6-7. Mr. Mujahid also alleges that SCC's "Approved Clinical Director's List" and SCC Policy 208 place higher restrictions on his religion by requiring that "periodicals" must be included in the Director's List. *Id.*, p. 7.

In addition, Mr. Mujahid claims that mailroom staff failed to pick up his "time barred" legal mail, that mailroom staff unsealed an envelope addressed to his attorney and marked as legal mail, and refused to send out legal mail addressed to the Attorney General's Office. *Id.*, pp. 7, 8.

Mr. Mujahid claims that Defendants have relied on SCC Policy 202 (Resident Postage, Packages, Mail & Internal Distribution) and Policy 208 (Sexually Explicit, Violent and Related Material)[1] even though such policies are unconstitutional and that Defendants' conduct constitutes violations of his due process rights, First Amendment rights of association and freedom of association, and Fourteenth Amendment right of equal protection. He also claims that Defendants have violated his right to equal protection because they are not providing him with individualized treatment as required by RCW 71.09. *Id.*, p. 10. Mr. Mujahid seeks compensatory and punitive damages. *Id.*, pp. 11-12.

**C.     Relief Sought**

In his latest two motions, Mr. Mujahid seeks the following relief:

---

[1] Copies of Policy 202 (Resident Postage, Packages, Mail & Internal Distribution) and Policy 208 (Sexually Explicit, Violent and Related Material) are attached to the Declaration of Cathi D. Harris. ECF No. 28, Attachs. B and C, respectively.

REPORT AND RECOMMENDATION- 3

(1) The Court issue an order staying "on invoking and subjecting SCC policy 208 upon the Mr. Mujahid until this case is resolved." ECF No. 36, p. 1.

(2) That Defendant Sparks be immediately restrained from any and all mailroom functions and handling of U.S. mail at SCC and be prohibited from having direct or indirect contact with Mr. Mujahid during the pendency of this case. ECF No. 42, p. 1.

**STANDARD OF REVIEW**

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 676 (2008). The purpose of preliminary injunction is to preserve the status quo or to prevent irreparable injury pending the resolution of the underlying claim. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). A Mr. Mujahid seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury to the Mr. Mujahid if injunctive relief is not granted; (3) a balancing of hardships favoring the Mr. Mujahid; and (4) advancement of the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). The moving party "must do more than merely allege imminent harm," he "must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

**DISCUSSION**

**A. Validity of SCC Policies 202 and 208 and Factors for Injunctive Relief**

This Court has already determined that the SCC has submitted evidence of a valid, rational connection between its mail scanning policies and its interest in preventing contraband and counter-therapeutic material from entering the SCC, and that Mr. Mujahid has failed to show

REPORT AND RECOMMENDATION- 4

actual prejudice or injury from which a likelihood of success on the merits of his access to the courts claim may be inferred. ECF No. 32, at 8. The Court also found that nothing precludes Mr. Mujahid from receiving specific periodicals as he may simply ask the SCC Chaplain to assist him in making a request to the Clinical Director. ECF No. 32, at 9. Further, it has already been found that "[i]t is self-evident that without a mail scanning policy, people outside the SCC could send contraband, weapons, and counter-therapeutic material through the mails into the facility." *Id*. at 10. This Court took judicial notice that the introduction of such material would have a detrimental impact on SCC residents and staff, and found that there is no ready alternative to the SCC's mail scanning policy. *Id*.

This Court has also already determined that SCC officials exercised their professional judgment in deciding what media enters the facility. ECF No. 32, at 12. An allegation now that Mr. Mujahid has not been able to receive periodicals and brochures that again, were not included on the Clinical Director's pre-approved magazine list does not change the Court's previous findings and rulings. This Court has also already determined that Mr. Mujahid has failed to demonstrate he has suffered irreparable harm and that he remains able to request the addition of his desired publications to the pre-approved list. *Id*. at 12-13. Finally, the Court has already undertaken a balance of hardships in this matter and determined that "[g]ranting a preliminary injunction as requested by Mr. Mujahid would cause more harm than would be caused by not granting it . . . .", citing to the potential contraband and counter-therapeutic materials that could enter the facility, and to the fact that granting the injunction would "place Mr. Mujahid in the extraordinary position of deciding who can work in the SCC mailroom . . . ." *Id*. at 13-14.

REPORT AND RECOMMENDATION- 5

**B.    Second Motion for Injunctive Relief (ECF No. 36)**

In his second motion for injunctive relief, Mr. Mujahid again argues that SCC Policies 202 and 208 are unconstitutional and asks that Defendants be prohibited from applying the policies to him. ECF No. 36. As noted above, these issue were raised and resolved with Mr. Mujahid's first motion for injunctive relief. The Court has already heard the arguments and decided that Mr. Mujahid failed to meet the burden required to warrant the relief requested. The Court's prior decision was not erroneous, there is no intervening controlling authority, and no new evidence. Accordingly, Mr. Mujahid's second motion for injunctive relief (ECF No. 36) should be denied.

**C.    Third Motion for Injunctive Relief (ECF No. 42)**

In his third motion for injunctive relief, Mr. Mujahid again asks that Defendant Sparks be removed from working in the SCC mailroom and/or prohibited from having contact with him during the pendency of this litigation, and an order prohibiting the SCC from applying its mail policy, SCC Policy 208, to Mr. Mujahid's mail. Again, these issues were raised and resolved with Mr. Mujahid's first motion for injunctive relief. In addition, the record reflects that Mr. Mujahid's new allegations of retaliation by Defendant Sparks are speculative only.

In his third motion for injunctive relief, Mr. Mujahid alleges that he was denied access to a "Can-AM Motorcycle" brochure and a newspaper from Anchorage, Alaska, based on SCC Policy 208. ECF No. 42, at 2. Mr. Mujahid provides no evidence, however, that he attempted to get these items submitted to the approved periodical list required by SCC policy. Mr. Mujahid alleges that Ms. Sparks is responsible for the denial of these items. ECF No. 42, p. 2. However, there is no evidence to support this claim. SCC Chief Investigator Darold Weeks investigated Mr. Mujahid's claims at the request of counsel for defendants. ECF No. 45 (Declaration of

REPORT AND RECOMMENDATION- 6

Darold Weeks (Weeks Decl.), p. 1, ¶¶ 1-2. Investigator Weeks reviewed the Clinical Director's Pre-Approved Magazine List and found that the "Can-Am Motorcycle" brochure, the "Fairbanks Daily News-Miner," and the "Anchorage Times" do not appear on the list of approved periodicals. *Id*., p. 2, ¶ 3. Investigator Weeks found no documentation to show that Mr. Mujahid requested any of these titles be added to the approved list. *Id*. He did find that "Alaska Magazine," "Alaska News," and "Anchorage News," are on the approved list. *Id*.

Mr. Mujahid alleges in his third motion that Ms. Sparks acted in retaliation regarding the return of two Resident Requests to Transfer Funds (RTFs) that he submitted to the mailroom. ECF No. 42, p. 2. Mr. Mujahid claims that on May 9, 2011, he submitted an RTF for $15.00 to the Washington State Employees Credit Union. *Id*. Investigator Weeks discovered during his investigation into the matter that the $15.00 check was returned to Mr. Mujahid because he had insufficient funds in his resident account. ECF No. 54 (Weeks Decl.), p. 2, ¶ 4. Mr. Mujahid also alleges that Ms. Sparks delivered back the RTF that he submitted on May 9, 2011. ECF No. 42, p. 2. Mr. Mujahid states that the RTF was returned because he failed to mark the appropriate box for what kind of payment was to be sent out. *Id*. Mr. Mujahid alleges that the RTF was never received by the accounting office, and then speculates that this "only means that Defendant Sparks discarded the RTF." *Id.* There is no evidence to support his allegation. Conversely, Investigator Weeks contacted Colleen Donner, who is in charge of the RTF process, and was informed that she received the RTF on June 10, 2011, but has not yet processed it due to insufficient funds. ECF No. 45 (Weeks Decl.), p. 2. ¶ 5.

Mr. Mujahid's next allegation of retaliation is that Ms. Sparks is harassing him regarding his indigent resident status. ECF No. 42, p. 2. Mr. Weeks' investigation reveals that, on May 19, 2011, Mr. Mujahid received a letter from Felice Capone in the business office that informed

REPORT AND RECOMMENDATION- 7

him that after review of his indigent status, his resident account verified a balance of more than $40 for the prior three months, and he therefore no longer qualified for indigent status. ECF No. 45 (Weeks Decl.), pp. 2-3. After receipt of this letter, Mr. Mujahid requested that Ms. Sparks provide him free photocopies, which a resident on indigent status receives. *Id*. However, Ms. Sparks was aware of his removal from indigent status and informed Mr. Mujahid by memo, dated May 25, 2011, that she could not process his copies for free at the time because he was no longer indigent. *Id*. Ms. Sparks returned the copy requests to Mr. Mujahid. *Id*.

Mr. Mujahid next alleges that Defendant Sparks is retaliating against him by writing, or causing others to write, incident reports involving Mr. Mujahid, and that these actions are "clearly harassment and retaliation against Mr. Mujahid by this litigation." ECF No. 42, pp. 2-3. Investigator Weeks looked into the behavior management reports (BMRs) received by Mr. Mujahid on June 2 and June 10, 2011, and discovered that Mr. Mujahid has had an ongoing problem with the issue of covering his light fixtures and hanging items from the fixtures in his room. ECF No. 45 (Weeks Decl.), p. 3, ¶ 8. These actions violate SCC Policy 230(f)(12) and are considered safety issues. *Id*. Mr. Mujahid has received numerous BMRs in the past regarding this issue. *Id*.

On May 2, 2011, at the conclusion of his room inspection, Mr. Mujahid was given a copy of the inspection results by RRC Kristina Sparks and RRC Keldy Hendricks that instructed him to remove the hanging plants and uncover the fixture. ECF No. 45 (Weeks Decl.), p. 3, ¶ 8. On May 3, 2011, a follow-up inspection was conducted and Mr. Mujahid was in compliance. *Id*. On June 2, 2011, RRC Kristina Sparks discovered that the coverings were back, and issued a Category II BMR and RRC Jeff Cutshaw delivered a copy of the BMR to Mr. Mujahid, directing him to remove the paper and plants that had returned to cover his light fixture. *Id*. Later that

REPORT AND RECOMMENDATION- 8

same date, RRC Jeff Cutshaw issued a Notice of Occupancy Restriction for the Safety and Fire issues. *Id*.

On June 9, 2011, at approximately 5:15 p.m., the obstructions had once again returned, and an observation report was created by RRC Carissa Bonnema regarding the plants hanging from the light fixture, but Mr. Mujahid appeared to be sleeping so staff elected not to disturb him at that time. ECF No. 45 (Weeks Decl.), p. 3, ¶ 8. Later that same evening at approximately 6:20 p.m., RRC Bonnema and RRC Xavier McGriff observed Mr. Mujahid on the smoking pad and asked him to remove the cover from his light and the hanging plants. Mr. Mujahid demonstrated to staff that he had removed the items. *Id*.

On June 10, 2011, RRC McGriff wrote another BMR for continuing non-compliance with SCC policy when the obstructions were noted to have returned. ECF No. 45 (Weeks Decl.), pp. 3-4, ¶ 8. RRC Sparks provided a witness statement that she observed the obstructions during her census. *Id*. RRC Cutshaw also issued a Notice of Occupancy Restriction that same evening at the direction of SCC Safety Officer Eva Lemmons for his repeated safety and fire issues. *Id*.

Finally, Mr. Mujahid discusses grievances he has filed against Ms. Sparks and complains that the administration "still allowed" her to work on Alder West, the unit where Mr. Mujahid resides. ECF No. 42, p. 3. On April 16, 2010, Mr. Mujahid sent a letter to an inmate at the Department of Corrections (DOC) that DOC personnel intercepted because it contained language threatening physical harm to Ms. Sparks. ECF No. 45 (Weeks Decl.), p. 4, ¶ 9. For a period of time, Ms. Sparks did not work on Mr. Mujahid's unit because of that threatening language. *Id*. However, she decided to return to work as usual, and Associate Superintendent Cathi Harris has determined that Ms. Sparks is not restricted from working on Alder West. *Id*. Ms. Sparks has never been barred from the unit. *Id*.

REPORT AND RECOMMENDATION- 9

There is a long history, spanning years, of grievances filed by Mr. Mujahid in which he raises various complaints about Ms. Sparks. Mr. Mujahid agrees that he has a history of grievances against Ms. Sparks, but contends that this is due to her harassing nature and the failure of SCC authorities to curb her abuses. According to Mr. Weeks, however, these grievances have consistently been investigated and determined to be unfounded. ECF No. 45 (Weeks Decl.), p. 4, ¶ 10.

The Ninth Circuit consistently has held that prison staff may not retaliate against inmates for exercising their constitutional rights to file lawsuits and grievances. *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994); *Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995); *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005). To establish a retaliation claim, an inmate must show that: (1) a state actor took some adverse action against the inmate; (2) because the inmate engaged in constitutionally protected conduct; (3) the adverse action chilled the inmate's exercise of First Amendment rights; and (4) the adverse action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

To prevail on a First Amendment retaliation claim, a plaintiff must initially show that the protected conduct was a substantial or motivating factor in the defendant's decision. *Carepartners LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008). If the plaintiff makes this initial showing, the burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct. *Id.* To meet this burden, a defendant must show by a preponderance of the evidence that it *would* have reached the same decision; it is insufficient to show merely that it *could* have reached the same decision. *Id.*

REPORT AND RECOMMENDATION- 10

Retaliation is not proven by simply showing that a defendant prison official took adverse action after he knew that the prisoner had engaged in constitutionally protected activity. Although timing can be considered as circumstantial evidence of a retaliatory event, timing alone cannot establish retaliation. *See Pratt*, 65 F.3d at 808. As noted by one district court, "merely being aware of ongoing litigation does not establish that all adverse actions taken thereafter are retaliatory." *Estrada v. Gomez*, No. C 96-1490 S1 (PR), 1998 WL 514068 * 3 (N.D. Cal. 1998). The overall circumstances of the alleged retaliation must be considered and not simply the order of events. *Id.*

In sum, Mr. Mujahid alleges that Defendant Sparks is responsible for denying him further periodicals that do not meet SCC policy, that she "discarded" his RTF, that she is filing incident reports against him because of his litigation activities, and that his grievances should "bar" her from his living unit. He alleges that her actions were motivated by retaliatory purposes. However, there is no evidence to support that allegation. In fact, evidence submitted of the investigation conducted by Chief Investigator Darold Weeks demonstrate that Mr. Mujahid's allegations are without support.

The evidence before this Court remains that a SCC resident must submit any desired periodicals, magazines, or brochures to the Clinical Director for pre-approval. Apparently, Mr. Mujahid continues to order periodicals, magazines, and brochures that have not been preapproved. He is not entitled to a preliminary injunction staying application of SCC policies to him and/or removing SCC employees from their mailroom duties each time his non-approved items are refused. This Court has already determined that Mr. Mujahid has not met the factors for injunctive relief under these circumstances.

Accordingly, it is recommended that Mr. Mujahid's third motion (ECF No. 42) be denied.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court **deny** Mr. Mujahid's second (ECF No. 36) and third (ECF No. 42) motions for preliminary injunction.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 12, 2011**, as noted in the caption.

DATED this  19th  day of July, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 12